UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 07-60821-CIV-MARRA/JOHNSON

ANTONIO GONZALEZ CARRIZOSA, et al.,

    Plaintiffs,

v.

CHIQUITA BRANDS INTERNATIONAL,
INC., an Ohio corporation, and CHIQUITA
FRESH NORTH AMERICA LLC, a Delaware
corporation,

    Defendants.
_____/

## **OPINION AND ORDER**

THIS CAUSE is before the Court on Defendants' Motion to Transfer Venue to the District of Columbia (DE 9, 10). Plaintiffs filed a Response in Opposition (DE 18), and Plaintiffs subsequently filed a Reply (DE 19). The motion is now fully briefed and is ripe for review. The Court has carefully considered the motion and is otherwise fully advised in the premises.

*Background*

On June 13, 2007, Plaintiffs Antonio Gonzalez Carrizosa et al. ("Plaintiffs") filed a four-count Complaint against Defendants Chiquita Brands International, Inc., and Chiquita Fresh North America LLC, alleging two counts under the federal Alien Tort Statute and two counts under Florida tort law (DE 1). The facts of the case, as alleged in the Complaint and the parties' motions, are as follows: Plaintiffs are family members of deceased Colombian nationals who

1

were murdered by "terrorist organizations which received financial support from Defendants." (Compl. ¶¶ 1-2.) Defendants incorporated a subsidiary under Colombian law, called C.I. Bananos de Exportacion, S.A. ("Banadex"), to cultivate bananas for the U.S. market. (Compl. ¶ 28.) Beginning in 1997, Defendants began making payments to the Autodefensas Unidas de Colombia ("AUC") (United Self-Defense Forces of Columbia). (Compl. ¶ 29.) These payments totaled over $1.7 million. (Compl. ¶ 30.) The U.S. Government has classified the AUC as a terrorist organization since 2001. (Compl. ¶ 29.) Banadex made payments through an intermediary security company (a *Convivir*) which then funneled the money to the AUC to be used "in furtherance of its illegal activities." (Compl. ¶ 31.) Defendants were "aware that the AUC was a violent terrorist organization as early as 2001." (Compl. ¶ 32.) Defendants sought legal advice regarding the legality of the payments in early 2003. (Compl. ¶ 35.) At that time, Defendants were advised that the payments were not legal and "Chiquita Brands should leave Colombia." (Compl. ¶ 35.) Defendants continued making payments. (Compl. ¶ 35-37.)

Around April 24, 2003, Defendants' executives met with officials from the U.S. Department of Justice (DOJ). (Compl. ¶ 38.) DOJ officials advised Defendants that the payments to AUC were illegal and must cease. (Compl. ¶ 38.) Defendants continued to make payments to AUC after that meeting. (Compl. ¶ 39.) Criminal charges were filed against Defendant on March 13, 2007. (Compl. ¶ 42; Def. Ex. D.)

The Complaint describes in brief the specific deaths for which relief is sought in the instant case, all who were allegedly killed by AUC between 1993 and 2004. (Compl. ¶¶ 43-63.) Plaintiffs bring four counts against Defendant. Two claims are brought under the Alien Tort Statute, 28 U.S.C. § 1350: one for "providing material support to a terrorist organization

resulting in death," and the other for extrajudicial killing.  Plaintiffs also bring two counts under Florida law, one for negligent retention and supervision and one for negligent hiring.

*Motion to Change Venue*

Defendants have asked this Court to transfer this case to another venue, specifically the District of the District of Columbia ("D.C."), pursuant to 28 U.S.C. § 1404(a).  The crux of Defendants' argument is that the "interests of justice" will be served by transfer, because another "substantially similar" action is pending before that court.  Because the two cases will raise similar legal and factual questions, Defendants assert that both cases should be argued before the same court.  Plaintiffs respond that the cases are not sufficiently similar to warrant transfer to another district and that the Plaintiffs' choice of forum should not be disturbed because Defendants have not demonstrated any substantial justification for the change of venue.

*Discussion*

Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  First, the Court must determine whether the alternative venue is one in which the action could have been brought originally by the plaintiff.  *See Van Dusen v. Barrack*, 376 U.S. 612, 616-17 (1964).  Pursuant to 28 U.S.C. § 1391(c), an action may be brought against a corporation "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  Plaintiffs argue that D.C. is an inappropriate venue for this case. (Def. Mem. 11-12.)  However, Plaintiffs do not explicitly argue that the D.C. court will not have personal jurisdiction over Defendant; instead, Plaintiffs examine the dearth of factual connections between this case and the District of

Columbia. (Def. Mem. 12.) Defendants appear to assume that the D.C. court is a proper venue based on the fact that this case is "founded entirely upon a criminal plea entered in the District of Columbia." (Pl. Reply 2.) Because neither party has asserted that the D.C. court has personal jurisdiction over Defendants, the Court assumes that Defendants rely on § 1391(b)(2) for its argument that the D.C. court is a proper venue. Section 1391(b)(2) states that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Plaintiffs' causes of action, however, are not based on Defendants' guilty plea – the basis for this suit is Defendants' payments to AUC and AUC's allegedly wrongful conduct, and neither party has suggested that these acts took place in D.C. Thus, based on the present record, the Court fails to understand how D.C. is a proper venue where the case might have been brought in the first instance.

Even assuming that the District of Columbia would be a proper venue, the Court declines to transfer this case. In determining whether to transfer a case to another proper venue under § 1404(a), courts rely on a number of potential factors including: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses, and the availability of witnesses through compulsory process; (4) the location of documents and other sources of proof; (5) the relative ability of the parties to bear the expense of changing the forum; and (6) trial efficiency and expense to the justice system. *See, e.g., D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006); *Stateline Power Corp. v. Kremer*, 404 F. Supp. 2d 1373, 1380 (S.D. Fla. 2005); *Mason v. Smithkline Beecham Clinical Laboratories*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001); *Gould v. National Life Ins. Co.*, 990 F. Supp. 1354, 1357-58 (M.D. Ala.1998). However, "[t]he plaintiff's choice of forum should not be disturbed

unless it is *clearly outweighed* by other considerations." *Robinson v. Giamarco & Bill, P.C.*, 74 F. 3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B 1981)) (emphasis added).

In a motion to transfer venue, the movant has the burden of persuading the trial court that the transfer is appropriate and should be granted. *See Tampa Bay Storm, Inc. v. Arena Football League, Inc.*, 932 F. Supp. 281, 282 (M.D. Fla. 1996) (citing *Factors Etc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978)). The movant must therefore show that the balance of convenience "strongly favors" transfer in order to overcome the presumption in favor of the plaintiff's choice of forum. *Mason*, 990 F. Supp. 2d at 1359; *Tampa Bay Storm*, 932 F. Supp. at 282.

As for the first factor, a plaintiff's choice of forum is accorded significant weight in determining the propriety of transfer. In this case, however, Plaintiffs are not residents of the Southern District of Florida, nor did any events giving rise to the Plaintiffs' claims take place in this District. "[W]hen the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to *less* consideration." *Windmere Corp. v. Remington Products, Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (emphasis added); see also *Silong v. United States*, No. 05-CV-55-OC10GRJ, 2006 WL 948048 at *1 (M.D. Fla. Apr. 12, 2006). While a non-resident plaintiff's choice is accorded less weight, a non-resident plaintiff's choice is also not discounted completely. Defendants have not argued that the Southern District of Florida is an improper venue. As such, the first factor weighs in favor of Plaintiffs' choice of this District.

With respect to the second factor, the convenience of the parties, the Court has no doubt that this suit would be somewhat more convenient for Defendants if it was tried in the District of

Columbia. In this case, this particular factor conflates with the factor examining the relative expense to each party of changing the forum. Defendants are already defending another suit before the D.C. court, so their costs of travel, accommodating witnesses, and producing evidence could be reduced. Conversely, Plaintiffs' counsel is based in this District, and requiring Plaintiffs' counsel to travel to D.C. to prosecute their suit would add litigation costs for Plaintiffs. Plus, as Plaintiffs suggest, travel between Columbia and Southern Florida might be easier than travel from Columbia to Washington. (Def. Mem. 13.) On balance, considerations of convenience and expense might slightly favor Defendants, but these factors do not weigh heavily in favor of transfer.

The next two factors, the convenience for witnesses and the availability of sources of proof, are inapplicable in this dispute. Defendants' corporate headquarters are located in Ohio, but the two districts in question are the Southern District of Florida and the District for the District of Columbia. Regardless of the resolution of the instant motion, Defendants' corporate witnesses will still have to travel from Ohio to another venue for a trial. Further, no evidence pertaining to the instant case can be found in either venue. Defendants argue that this case has "ostensible connections" to D.C., in that Defendants disclosed their illegal AUC payments to the Department of Justice, located in D.C., and that Defendants' criminal pleas were entered in D.C. (Def. Mot. 12-13.) The Court finds these "connections" to be completely insubstantial and irrelevant to the instant case. The fact that Defendants disclosed the payments and pled guilty to criminal charges within the boundaries of the District of Columbia has no particular bearing on this case. Proof of both of these facts could be demonstrated as easily before this Court as they could before a court in D.C. Many witnesses and sources of proof relating to Plaintiffs'

individual claims can and will only be found in Columbia; for this evidence, the specific venue chosen in the United States means little. Thus, the Court finds these two factors do not weigh in favor of transfer to D.C.

The last factor, trial efficiency and expense to the justice system, is perhaps the most hotly contested by the parties. Defendants' argument, boiled down to its core, is that it would be inefficient and wasteful of judicial resources to allow this suit to continue in this District because a similar case was filed first before the District Court for the District of Columbia and because both cases will require resolution of some overlapping questions of fact and law. Plaintiffs respond by explaining that the issues in each case are sufficiently distinct that transfer is not warranted. Further, Plaintiffs argue that no gains in efficiency could be realized by transferring this case to D.C., thus militating against a change of venue.

The Court concludes that some gains in efficiency could be realized from a change of venue to D.C. For instance, some of the common issues of law (e.g., the specific requirements for alleging a cause of action under the Alien Tort Statute) and fact (e.g., Defendants' interactions with the AUC) could be resolved before one court without fear of inconsistent judgments. However, the Court does not believe that this gain in efficiency justifies transfer of this case. This case involves separate plaintiffs with separate causes of action. Defendants should not be "rewarded" with a change of venue merely because plaintiffs in the D.C. action "won" the race to the courthouse when Plaintiffs' choice of venue in this action was legitimate. Additionally, once the common issues are decided, the specific factual claims of these Plaintiffs will predominate, and individual issues of causation will pervade the litigation.

A non-resident plaintiff's forum is still accorded some weight when ruling on a motion to

change venue. Plaintiffs have chosen this District, and Defendants have not demonstrated that the judicial efficiency gains will "clearly outweigh" Plaintiffs' choice. Defendant has failed to provide any substantial argument that "the interests of justice" would "strongly favor" transfer of this case to the District of Columbia.

Accordingly, Defendant's Motion to Transfer Venue to the District of Columbia (DE 9, 10) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 13th day of November, 2007.

_____
KENNETH A. MARRA
United States District Judge

Copies furnished to:
all counsel of record